**In re Kim Edwin KINDINGER, Linda Diane Kindinger, Debtors.**

**Bankruptcy No. 96–62492.**

United States Bankruptcy Court, N.D. Ohio.

Feb. 12, 1998.

Douglas L. Thrush, Mansfield, OH, for Debtors.

C. Richard Thompson, Thompson and Cockley Co., L.P.A., Mansfield, OH, for Creditor Paul Gordon.

Toby L. Rosen, Chapter 13 Trustee, Canton, OH.

MEMORANDUM OF DECISION

JAMES H. WILLIAMS, Bankruptcy Judge.

Pending before the Court is an objection filed by Chapter 13 Debtors, Kim Edwin Kindinger and Linda Diane Kindinger, to the claim of Paul Gordon. Mr. Gordon has filed a response asserting that the entire amount of his claim is due. The Court conducted a hearing and took the matter under advisement.

## FACTS

On November 8, 1988, the Debtors entered into a three-year lease with Charvid Construction Co., Inc. (Charvid) for a premises located in Mansfield, Ohio. The term of the original lease was from March 1, 1989, to February 28, 1992. The lease provided for an option to renew for additional three-year periods. This provision did not specify that the option to renew must be exercised in writing. Both parties agree that the lease was orally renewed for an additional three-year term from March 1, 1992, to February 28, 1995. As a result of this renewal, monthly rent was increased from $750.00 to $854.11 as provided for in the renewal option provision in the lease. The Debtors used the premises to operate a video rental store known as Video World.

On or about February 16, 1990, Paul Gordon purchased the building leased by the Debtors from Charvid Construction. The lease between Charvid and the Debtors was assigned to Mr. Gordon. Mr. Gordon testified that the condition of the premises which the Debtors leased was in considerably worse condition when the Debtors vacated the premises in April, 1996, than when he originally inspected the premises in February, 1990.

At the hearing, Mr. Gordon introduced a series of photographs taken in May, 1996, which demonstrated the damage to the bathrooms, the heating/air conditioning unit, the walls and floors of the premises, and the front door which did not have an outside lock. Furthermore, the photographs showed that the Debtors left shelving nailed into the drywall, debris on the floor, and a sign which Mr. Gordon had to pay to remove. Mr. Gordon also introduced into evidence a list of repair and removal expenses totaling $11,771.25 along with the checks written to pay the expenses and the invoices used to purchase building material, plumbing supplies, and material to repair the heating/air conditioning unit. Mr. Gordon also testified that he did not receive at least one month's notice before the Debtors vacated the premises in April, 1996, and he asks to be compensated for at least one month's rent in the sum of $854.11. Moreover, Mr. Gordon asserts that

he was not able to offer the premises for rent until September, 1996, because of the time needed to repair the damage left when the Debtors vacated the premises.

The Debtors presented their own photographs depicting the condition of the premises when they moved in on March 1, 1989. They testified that the premises were in poor condition when they initially leased the building and that they spent $20,000.00 to make improvements to the building. Specifically, the Debtors stated that the heating/air conditioning unit never worked, the bathrooms were stained, at least one of them was never used except for storage, and the walls were in poor condition. Further, the Debtors testified that they left the building in excellent condition and informed Mr. Gordon in February, 1996, that they would be vacating the premises in April, 1996. Moreover, the Debtors testified that in their opinion, the lease was not renewed for a second three-year term on February 28, 1995, and that they believed the lease was on a month-to-month basis because Mr. Gordon did not ask them to renew the lease for another three-year period. The Debtors cite to the fact that the rent was never increased after the second alleged exercise of the renewal option which, in their minds, provides evidence that they had a month-to-month tenancy with Mr. Gordon. The Debtors filed a petition for relief under Chapter 13 of Title 11 of the United States Code on September 24, 1996, and their Chapter 13 plan was confirmed by this Court on November 18, 1996.

## DISCUSSION

The Court has jurisdiction in this contested matter by virtue of Section 1334 of Title 28 of the United States Code and General Order No. 84 entered in this district on July 16, 1984. This is a core proceeding under Section 157(b)(2)(B) of Title 28 of the United States Code. This Memorandum of Decision constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### Lease Renewal Option

An election or option to renew a lease must be exercised to bring the renewal into effect. 65 O.Jur.3d *Landlord and Ten-*

*ant* § 547 (1986). The election to exercise the option may be express or it may be inferred from the circumstances and the conduct of the parties. *Id.* If the provision for an extension or renewal expressly requires the giving of notice of election to exercise the option, then the giving of notice is necessary. However, in the absence of a specific provision regarding the matter of notice, any form of notice which informs the landlord that the tenant has exercised the option is sufficient. *Id.*

█ Where the provision for an extension or renewal does not expressly require notice, Ohio law holds that merely holding over under the lease constitutes an election to exercise the option which binds both parties for the term designated in the option. 65 O.JUR .3d *Landlord and Tenant* § 548 (1986). Furthermore, the act of holding over on a lease which provides for an extension or renewal under a different rent from that of the original lease term operates to bind both parties under the new rental terms. *Id.* In the case at bar, there was no evidence provided that the Debtors communicated, either orally or in writing, to Mr. Gordon that they did not wish to exercise the renewal option. Instead, the Debtors remained in the premises after the first renewal option expired on February 28, 1995, and continued to pay the increased monthly rent of $854.11 as specified in the renewal option until the premises were vacated in April, 1996.

█ Furthermore, the parties' lack of a writing to provide evidence that the renewal option from March 1, 1995, to February 28, 1998, was exercised does not fall under the Statute of Frauds to render the option unenforceable thereby creating a month-to-month tenancy. This is because the lease between the parties failed to stipulate that notice of the exercise of the option must be in writing. In the absence of such a requirement in a lease, the notice to exercise the option may be given orally without violating the provisions of the lease or the Statute of Frauds which normally requires agreements concerning interests in land to be in writing. 51 O.JUR.3d *Fraud and Deceit* § 57 (1984). The reasoning is that the original lease between the parties satisfied the statute and incorpo-

rated within it the option to renew the lease for subsequent three-year terms.

From its review of the lease and the testimony of the respective parties, the Court finds the Debtors exercised the option to renew the lease for a second three-year term from March 1, 1995, to February 28, 1998. The Debtors provided no evidence that they informed Mr. Gordon that the renewal option would not be exercised. In fact, the Debtors remained on the premises and continued paying rent until they moved out in April, 1996. The mere holding over under the lease and continuing to pay rent bound both parties to a new three-year term as designated in the option. The fact that rent was not raised for the second renewal period does not mean that the renewal option itself was not exercised. There is no requirement in the renewal option that rent must be raised although it provided for that possibility.

█ Mr. Gordon testified that he did not receive any notice from the Debtors of their intention to leave the premises and he was unable to lease the premises until September, 1996, because of the various damages caused by the Debtors. Despite the Debtors' testimony to the contrary, the Court finds the Debtors did not provide adequate notice to Mr. Gordon of their intention to vacate the premises in accordance with Ohio law. *See Steiner v. Minkowski,* 72 Ohio App.3d 754, 596 N.E.2d 492 (1991); Ohio Revised Code § 5321.17(B). Mr. Gordon has testified and has documented on his list of repairs and expenses that the Debtors abandoned the premises after April 1, 1996, and that the premises was vacant from May through August, 1996. *See* Creditor's Exhibit # 2. Accordingly, Mr. Gordon is entitled to assert a claim for four month's rent, or $3,416.44, to be paid through the Debtors' confirmed Chapter 13 plan.

### Damages

█ Upon finding that the lease was, in fact, exercised for a second three-year term from March 1, 1995, to February 28, 1998, the Court must determine if Mr. Gordon is entitled to be reimbursed for expenses incurred to repair damages to the leased prem-

ises. According to the terms of the lease, the Debtors had an affirmative duty to maintain and make necessary repairs to the leased premises. Article 6 of the lease states:

> The Lessee agrees to make and pay for all necessary repairs to the interior of the demised premises, including all plumbing lines, water lines, plumbing fixtures, automatic entrance doors, all glass, heating and air conditioning systems . . .

Furthermore, Article 19 of the lease provides that:

> Upon termination of the lease, the Lessee agrees to deliver to the Lessor physical possession of the demised premises in good condition, wear and tear, damage not attributable to the negligence of the Lessee excepted.

Upon review of the photographs provided by Mr. Gordon and received into evidence illustrating the condition of the premises after the Debtors vacated in April, 1996, the Court finds the Debtors failed to make necessary repairs to the bathrooms and the heating/air conditioning system as required by the terms of the lease. Moreover, the photographs reveal that the Debtors certainly failed to leave the premises in good condition adequate to allow Mr. Gordon to immediately rent the premises to another tenant. Mr. Gordon provided a list of repairs and expenses, the checks written to pay therefor and the original invoices to document what was purchased. These documents were likewise received in evidence. Accordingly, the Court finds Mr. Gordon's expenses incurred in repairing the heating/air conditioning system and the plumbing in the bathrooms to be commercially reasonable and necessary in order to rent the premises to another tenant.

Furthermore, Mr. Gordon alleges that the Debtors are responsible for the damage caused by the removal of trade fixtures from the premises. Article 10 of the lease provides:

> Any damage to the building caused by removal [of trade fixtures] shall be promptly repaired to the satisfaction of Lessor by the Lessee.

Again, the photographs depicting the condition of the premises when the Debtors vacated convince the Court that the Debtors were in violation of Article 10 of the lease by failing to repair the walls which were damaged by the installation of trade fixtures. The photographs also illustrate that the floors of the premises were covered with debris from the shelving, cabinets, and display racks which were conceded to be trade fixtures by the Debtors. In addition, according to Article 8 of the lease, the Debtors also are responsible for the various utility expenses incurred when they failed to provide Mr. Gordon with adequate notice of their departure from the premises.

The Debtors cite to Article 9 of the lease to support their position. Article 9 provides:

> The Lessor agrees that the Lessee may at its own expense, from time to time during the term hereof, make such alterations, or changes in the demised premises as it finds necessary or convenient for its purposes, providing that Lessee obtains Lessor consent prior to changes. Lessee agrees that all alterations or changes will be in a first class workmanlike manner and Lessee shall have neither the right nor the obligation at the end of the lease to remove the same or restore the premises to the condition in which they were originally.

Article 10 of the lease, however, specifically refers to trade fixtures such as the shelving and display racks and requires that any damage caused by their removal be repaired by the Debtors. Moreover, Article 19 of the lease, as mentioned earlier, requires the Debtors to deliver possession of the premises to Mr. Gordon in good condition which the photographs depict to the contrary. The Court finds the list prepared by Mr. Gordon itemizing the remaining expenses incurred to restore the premises to a commercially reasonable condition convincing and sufficiently detailed, to be appropriate. Thus, Mr. Gordon is entitled to a claim for damages to the premises which he leased to the debtors in the amount of $11,771.25 in accordance with the terms of the Debtors' confirmed Chapter 13 plan.

An Order in accordance with the foregoing shall issue forthwith.

## ORDER

For the reasons set forth in the accompanying Memorandum of Decision, the Court finds the objection of the Debtors, Kim Edwin Kindinger and Linda Diane Kindinger, to the proof of claim filed by Paul Gordon not to be well taken and the same should be, and hereby is, **DENIED.** The claim of Paul Gordon shall be allowed in the amount of $15,187.69 ($11,771.25 + $3,416.44) to be paid according to the terms of the Debtors' confirmed Chapter 13 plan.

IT IS SO ORDERED.